# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

CASE NO: 22-10450

BRUCE MUNRO and BRUCE MUNRO, LTD.,

Plaintiffs-Appellants,

v.

FAIRCHILD TROPICAL BOTANIC GARDEN, INC.,
*et al.*,

Defendants-Appellees.

------------------------------------------------------------------------

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT OF FLORIDA
Case No. 1:20-cv-20079-AHS

------------------------------------------------------------------------

## APPELLEES' ANSWER BRIEF

SHULLMAN FUGATE PLLC
Deanna K. Shullman
Florida Bar No. 514462
Allison S. Lovelady
Florida Bar No. 70662
2101 Vista Parkway, Suite 4006
West Palm Beach, Florida 33411
Telephone: (561) 429-3619
Email: dshullman@shullmanfugate.com
Email: alovelady@shullmanfugate.com
*Attorneys for Appellees*

## APPELLEES' CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1(a), Appellees Fairchild Tropical Botanic Garden, Inc.; Nannette Zapata; Kilburn Live, LLC; Night Garden, LLC; Kilburn Media, LLC; Mark Manuel; Imaginer Ltd.; Imaginer Inc.; and Max Painter ("Appellees") certify that the following is a full and complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this action and to this appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to any party:

Bruce Munro, Ltd d/b/a Bruce Munro Studio (Appellant)

Fairchild Tropical Botanic Garden, Inc., a privately held non-profit corporation with no parent company (Appellee)

Girones, Giselle M., Esq. (Attorney for Appellees)

Grafton, Mark, Esq. (Attorney for Zapata)

Imaginer Inc., a privately held corporation with no parent company (Appellee)

Imaginer Ltd., a privately held limited U.K. company with no parent company (Appellee)

Kilburn Live, LLC, a privately held limited liability company with no parent
company (Appellee)

Kilburn Media, LLC, a privately held limited liability company with no
parent company (Appellee)

Law Offices of Carl F. Schwenker (Attorneys for Appellants)

Louis, The Honorable Lauren F. (United States Magistrate Judge, Southern
District of Florida)

Lovelady, Allison S., Esq. (Attorney for Appellees)

Manuel, Mark (Appellee)

Munro, Bruce (Appellant)

Night Garden, LLC, a privately held limited liability company wholly
owned by Kilburn Live, LLC (Appellee)

Painter, Max (Appellee)

Rothman, Joel B., Esq. (Attorney for Appellants)

Schwenker, Carl F., Esq. (Attorney for Appellants)

Shubin & Bass P.A. (Attorney for Zapata)

Shubin, John K., Esq. (Attorney for Zapata)

Shullman, Deanna K., Esq. (Attorney for Appellees)

Shullman Fugate PLLC (Attorneys for Appellees)

Singhal, The Honorable Raag (United States District Judge, Southern

District of Florida)

SRIPLAW, P.A. (Attorneys for Appellants)

Teitelbaum, Meir, Esq. (Attorney for Appellants)

Zapata, Nannette (Appellee)

In accordance with Eleventh Circuit Rule 26.1-3(b), Appellees further

certify that no publicly traded company or corporation has an interest in the

outcome of this appeal or owns any stock in Appellees.

*/s/ Allison S. Lovelady*
Deanna K. Shullman
Florida Bar No. 514462
Allison S. Lovelady
Florida Bar No. 70662
2101 Vista Parkway, Suite 4006
West Palm Beach, Florida 33411
Telephone: (561) 429-3619
Email: dshullman@shullmanfugate.com
Email: alovelady@shullmanfugate.com

## STATEMENT REGARDING ORAL ARGUMENT

Appellees believe oral argument is unnecessary pursuant to the standard set forth in Rule 34(a)(2) of the Federal Rules of Appellate Procedure but are willing to participate in oral argument if the Court believes it would be beneficial.

## TABLE OF CONTENTS

APPELLEES' CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ....................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................... i

TABLE OF CONTENTS............................................................................. ii

TABLE OF AUTHORITIES ......................................................................v

COUNTERJURISDICTIONAL STATEMENT ………...……………………..xi

COUNTERSTATEMENT OF THE ISSUES...........................................................1

STATEMENT OF THE CASE......................................................................1

    Statement of the Facts.................................................................3

        A. The Appellees………………………………………………...3

        B. The NightGarden event…………………………………………4

        C. Pre-NightGarden pitch decks, NightGarden webpage and map.......7

        D. Munro's registration...………………………………………..…8

        E. Copyright Office refuses registration for Munro's light…………..9

        F. Munro's pre-suit letter……………………………………………10

    Proceedings and Disposition Below………………………………..11

STANDARD OF REVIEW ......................................................................12

SUMMARY OF THE ARGUMENT ......................................................13

ARGUMENT AND CITATIONS OF AUTHORITY ...........................................14

    I. THE DISTRICT COURT CORRECTLY HELD THAT MUNRO'S LIGHTS ARE UNCOPYRIGHTABLE AND USEFUL ARTICLES…..14

        A. Munro cannot protect the idea of placing lights outdoors………..15

B. Munro's lights are uncopyrightable…………………………………17

    1. The U.S. Copyright Office refused registration on the stick-and-bulb light…………………………………………………17

    2. Munro's lights are unoriginal and uncopyrightable………..19

C. Munro's lights are useful articles……………………………....22

II. THE DISTRICT COURT CORRECTLY HELD THAT THERE WAS NO ISSUED OF FACT ON MUNRO'S DMCA CLAIM……………...24

    A. Appellees' actions are outside othe scope of the DMCA because Appellees did not use Munro's works……………………………26

        1. Materials that do not use Munro's works are outside the scope of the DMCA……………………………………..…27

        2. Incorporating photos of Munro's works into works created by Appellees is outside of the scope of the DMCA………..…28

    B. Uncontroverted evidence shows Appellees took no action with CMI and had no knowledge or intent……………………..…31

        1. Appellees did not remove,conceal or falsify CMI…………31

        2. There was no evidence of intent, and the double scienter burden cannot be met…………………………………....32

    C. The district court properly considered the only evidence proffered………………………………………………………35

III. APPELLANTS' CLAIMS OF PROCEDURAL ROADBLOCKS ARE ERRONEOUS…………………………………………………………38

    A. The Court should affirm the judgment as to Appellees and may remand solely to permit the district court to enter final judgment regarding G-Lights……………………………………………...38

    B. Appellants' challenge to local rules is unfounded………………..41

iii

C. The district court did not err regarding Munro's errant statement of material facts…………………………………………………..45

D. The Court should not disturb the district court's holding that Appellants' motion for summary judgment is moot……………...47

IV. OTHER GROUNDS SUPPORT A DECISION TO AFFIRM THE JUDGMENT IN FAVOR OF APPELLEES……………..…………49

A. Munro's works contain no protectible elements and therefore there can be no copying…………………………………………..49

B. Munro is committing copyright misuse with his Forest Registration…………………………………………………53

C. Munro provided no evidence of damages………………………..54

CONCLUSION……………………………………………………….. 57

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENT AND TYPE-STYLE REQUIREMENT………... 58

CERTIFICATE OF SERVICE ………………………………………...58

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abner v. Scott Mem'l Hosp.*,
    634 F.3d 962 (7th Cir. 2011) ..............................................................3

*Anderson v. Liberty Lobby*,
    477 U.S. 242 (1986)................................................................... 37, 48

*Alper Auto, Inc. v. Day to Day Imports, Inc.,*
    *18-817*532020 WL 5514414 (S.D. Fla. July 13, 2020) ........................ 17, 20, 52

*Arango v. Guzman Travel Advisors*,
    761 F.2d 1527 (11th Cir. 1985) ............................................... 39, 40

*Baby Buddies, Inc. v. Toys R Us, Inc.*,
    611 F.3d at 1308, 1317 (11th Cir. 2010)…………………………………23, 54

*Bankers Trust Co. v. Mallis,*
    435 U.S. 381 (1978)........................................................................40

*Bateman v. Mnemonics, Inc.*,
    79 F.3d 1532 (11th Cir. 1996) ......................................................15

*Bel Air Lighting, Inc. v. Progressive Lighting, Inc.*,
    No. 1:07-CV-2199-TWT, 2010 WL 966422 (N.D. Ga. Mar. 15, 2010)..........54

*Booth v. City of Roswell*,
    754 Fed. App'x 834 (11th Cir. 2018) ............................................44

*Brunswick Cellulose, Inc. v. Rogers Cartage Co.*, CV208-87, 2009 WL
    10678571 (S.D. Ga. July 1, 2009), *aff'd,* 364 Fed. App'x 592 (11th Cir.
    2010) .......................................................................................47

*Buford v. Life Storage, LP, 20-10505,*
    2021 WL 3720044 (11th Cir. Aug. 23, 2021) ..................................12

*BWP Media USA Inc. V. HipHopzilla, Inc*.,
    No. 1:14-CV-0016-AT, 2016 WL 4059683 (N.D. Ga. May 26, 2016) ...........55

*Carlson v. FedEx Ground Package Sys., Inc.*,
    No. 8:05-CV-1380-T-24, 2013 WL 3804991 (M.D. Fla. July 19, 2013),
    *aff'd*, 787 F.3d 1313 (11th Cir. 2015)................................................57

*CBS Inc. v. Primetime 24 Joint Venture,*
    245 F. 3d 1217 (11th Cir. 2001) ......................................................33

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986).........................................................................37

*Compulife Software Inc. v. Newman,*
    959 F.3d 1288 (11th Cir. 2020) ................................................. 51, 52

*Coquina Investments v. TD Bank, N.A.,*
    760 F.3d 1300 n.6 ............................................................................40

*Cortes v. Universal Music Latino,*
    477 F. Supp. 3d 1290 (S.D. Fla. 2020).................................... 50, 51

*Danley v. Allen,*
    480 F.3d 1090 (11th Cir. 2007) .......................................................46

*Design Basics, LLC v. WK Olson Architects, Inc.,*
    No. 17-C-7432, 2019 WL 527535 (N.D. Ill. Feb. 11, 2019)...........27

*Endurance Am. Specialty Ins. Co. v. L. Pellinen Constr., Inc.,*
    *21-10256*, 2021 WL 5264673 (11th Cir. Nov. 12, 2021)..................36

*Energy Intel. Grp., Inc. v. Kayne Anderson Cap. Advisors, L.P.,*
    948 F.3d 261 (5th Cir. 2020) ..........................................................30

*Equal Employment Opportunity Comm'n v. STME, LLC,*
    938 F.3d 1305 (11th Cir. 2019) .......................................................48

*Faulkner Press, L.L.C. v. Class Notes, L.L.C.,*
    756 F. Supp. 2d 1352 (N.D. Fla. 2010) ......................... 26, 28, 29, 30

*Feist Publications, Inc.,*
    499 U.S. 340 (1991).............................................................. 19, 22, 54

*Fey v. Panacea Mgmt. Grp. LLC,*
    261 F. Supp. 3d 1297 (N.D. Ga. May 18, 2017) .............................33

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC,*
    139 S. Ct. 881 (2019).......................................................................55

*Frederick v. Sprint/United Mgmt. Co.,*
    246 F.3d 1305 (11th Cir. 2001) .......................................................12

*Friedman v. Live Nation Merchandise, Inc.,*
  833 F.3d 1180 (9th Cir. 2016) .........................................................30

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
  2014 WL 5798282 (D. Haw. Nov. 7, 2014) ....................................27

*GC2 Inc. v. Int'l Game Technology*,
  391 F. Supp. 3d 828 (N.D. Ill. 2019)...............................................30

*Gowski v. Peake*,
  682 F.3d 1299 (11th Cir. 2012) .......................................................35

*Guzman v. Hacienda Records, LP*
  No. 6:13-cv-41, 2015 WL 789113 (S.D. Tex. Feb 24, 2015) ..........30

*Habersham Plantation Corp. v. Art & Frame Direct, Inc*.,
  No. 10-61532-CIV, 2011 WL 4005454 (S.D. Fla. Sep. 8, 2011) ...................20

*Hollingsworth v. Perry*,
  558 U.S. 183 (2010).................................................................. 44, 46

*Home Design Servs., Inc. v. Park Square Enterprises, Inc*.,
  No. 6:02-CV-637-ORL28JGG, 2005 WL 1027370 (M.D. Fla. May 2,
  2005) ....................................................................................... 53, 56

*Home Legend v. Mannington Mills, Inc.*
  784 F. 3d 1404 (11th Cir. 2015) ............................................... 19, 20

*Jackson v. Hill*,
  489 Fed. App'x 325 (11th Cir. 2012) ..............................................45

*Josendis v. Wall to Wall Residence Repairs, Inc.*,
  662 F.3d 1292 (11th Cir. 2011) .......................................................36

*Kelley v. Universal Music Grp.,*
  *No. 14 CIV. 2968 PAE*, 2015 WL 6143737 (S.D.N.Y. Oct. 19, 2015)............56

*Kernel Recs. Oy v. Mosley*,
  694 F.3d 1294 (11th Cir. 2012) .......................................................55

*Krechmer v. Tantaros,*
  747 Fed. App'x 6 (2d Cir. 2019) .....................................................34

*Lanard Toys Ltd. v. Dolgencorp LLC*,
  958 F.3d 1337 (Fed. Cir. 2020) .......................................................19

vii

*Lapaix v. U.S. Atty. Gen.*,
    605 F.3d 1138 (11th Cir. 2010) ........................................................47

*Leigh v. Warner Bros., Inc.*,
    212 F.3d 1210 (11th Cir. 2000) ............................................... 50, 52

*Lucas v. Florida Power & Light Co.*,
    729 F.2d 1300 (11th Cir. 1984) ......................................................49

*Mango v. Buzzfeed*,
    970 F.3d 167 (2d Cir. 2020) ...........................................................30

*Marcus v. Galvez*,
    522 F. App'x 878 (11th Cir. 2013) ..................................................3

*Michael Grecco Prods., Inc. v. Time USA, LLC*,
    No. 20-CV-4875, 2021 WL 3192543 (S.D.N.Y. July 27, 2021) ............. 24, 28

*MiTek Holdings, Inc. v. Arce Eng'g Co.*,
    89 F.3d 1548 (11th Cir. 1996) ........................................................50

*Murphy v. Millenium Radio Group, LLC*,
    650 F. 3d 295 (3d Cir. 2011) ..........................................................30

*Norris Industries, Inc. v. Int'l Tel. & Tel. Corp.*,
    696 F.2d 918 (11th Cir. 1983) ........................................................17

*Oppenheimer v. Scarafile*,
    No. 2:19-CV-3590, 2022 WL 2704875 (D.S.C. Jul. 12, 2022) ......................34

*Oravec v. Sunny Isles Luxury Ventures, L.C.*,
    527 F. 3d 1218 (11th Cir. 2008) ....................................... 16, 19, 20

*Oravec v. Sunny Isles Luxury Ventures, L.C.*,
    469 F. Supp. 2d 1148, 1175 (S.D. Fla. 2006) ...................................56

*Parker v. Parker*,
    829 Fed. App'x 389 (11th Cir. 2020) .............................................45

*Personal Keepsakes v. PersonalizationMall.com, Inc.*,
    975 F. Supp. 2d 920 (N.D. Ill. 2013) ..............................................29

*Pitney Bowes, Inc. v. Mestre*,
    701 F.2d 1365 (11th Cir. 1983) ......................................................41

*Pohl v. MH Sub I LLC,*
   770 F. App'x 482 (11th Cir. 2019) ..................................................................20

*Reese v. Herbert,*
   527 F.3d 1253 (11th Cir. 2008) ............................................................. 44, 46

*Santhuff v. Seitz,*
   385 Fed. App'x 939 (11th Cir. 2010) ............................................................16

*Schiffer Pub., Ltd. v. Chron. Books, LLC*, No. CIV.A. 03-4962, 2004 WL
   2583817 (E.D. Pa. Nov. 12, 2004) ..................................................................29

*Singleton v. Dean,*
   611 F. App'x 671 (11th Cir. 2015) .......................................................... 14, 50

*Star Athletica, LLC, v. Varsity Brands, Inc.,*
   137 S. Ct. 1002 (2017) ........................................................................ 22, 23, 24

*Stern v. Does,*
   978 F. Supp. 2d 1031 (C.D. Cal. 2011) ........................................................55

*Swint v. City of Wadley, Ala.,*
   11 F.3d 1030 (11th Cir. 1994) ........................................................................36

*Thompkins v. Lil' Joe Records, Inc.,*
   476 F.3d 1294 (11th Cir. 2007) ......................................................................13

*Turner v. Wells,*
   879 F.3d 1254 (11th Cir. 2018) ......................................................................49

*Utopia Provider Sys., Inc. v. Pro-Med Clinical Sys., L.L.C.,*
   596 F.3d 1313 (11th Cir. 2010) ......................................................................15

*Victor Elias Photography, LLC v. Ice Portal, Inc.,*
   43 F. 4th 1313 (11th Cir. 2022) .................................................... 33, 34, 35, 37

*Volk v. Zeanah,*
   No. 6:08-CV-94, 2010 WL 11537582 (S.D. Ga. Sept. 27, 2010) ...................54

*Williams v. Slack,*
   438 Fed. App'x 848 (11th Cir. 2011) ...................................................... 13, 47

*Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC,*
   259 F.3d 25 (1st Cir. 2001) ............................................................................19

*Yellow Pages Photos, Inc. v. Dex Media, Inc.*,
 2021 WL 799695 (M.D. Fla. Feb. 3, 2021) ............................ 26, 28, 29, 30, 33

**Constitutional Provisions & Statutes**

17 U.S.C. § 101 ...................................................................................................22

17 U.S.C. § 102 ...................................................................................................15

17 U.S.C. § 106 .....................................................................................................2

17 U.S.C. § 410 ............................................................................................ 15, 20

17 U.S.C. § 412 ............................................................................................ 54, 55

17 U.S.C. § 504 ...................................................................................................55

17 U.S.C. § 505 ...................................................................................................55

17 U.S.C. § 1202 ....................................................................... 2, 24, 25, 33, 34

17 U.S.C. § 1203 .................................................................................................55

**Rules & Regulations**

Fed. R. App. P. 3 .................................................................................................41

Fed. R. App. P. 32 ....................................................................................... 3, 47

Fed. R. Civ. P. 54 ................................................................................................39

Fed. R. Civ. P. 55 ................................................................................................39

Fed. R. Civ. P. 56 ................................................................................................12

37 C.F.R. § 201.1 ................................................................................................18

S.D. Fla. Loc. R. 7.1 ............................................................................ 41, 42, 44, 45

S.D. Fla. Loc. R. Rule 26.1 .............................................................. 41, 42, 43, 44, 45

S.D. Fla. Loc. R. Rule 37 ................................................................................. 11, 49

S.D. Fla. Loc. R. 56.1 ....................................................................... 45, 46, 47, 48

## **COUNTER JURISDICTIONAL STATEMENT**

Appellees agree with Appellants Bruce Munro's and Bruce Munro Ltd.'s (collectively, "Munro") jurisdictional citations of authority as it relates to the Order on Defendants' Joint Motion for Summary Judgment. Appellees disagree that this Court has jurisdiction over other trial court orders contained in Appellants' brief because those were not included in the Notice of Appeal and are not properly before this Court.

## COUNTERSTATEMENT OF THE ISSUES

1.      Whether the district court correctly held that Munro could not satisfy the first element of copyright infringement because Munro's lights are uncopyrightable and useful articles.

2.      Whether the district court correctly held that Munro's Digital Millennium Copyright Act ("DMCA") claim failed because none of the complained-of works are Munro's works, there was no evidence that Appellees took any action regarding copyright management information ("CMI"), and there was no evidence that Appellees acted with the double scienter the DMCA requires.

3.      Whether the district court's entry of final judgment while defendant G-Lights remained in default was in error and whether it has any bearing on the judgment entered in Appellees' favor.

4.      Whether the district court should be affirmed on other grounds supported by the record.

## STATEMENT OF THE CASE

Munro attempts to invoke the Copyright Act and DMCA to prevent others from using lights in outdoor displays. Specifically, Munro complains about Appellees' display of two lights—not created by Munro—in a temporary, outdoor event called *NightGarden* at Fairchild Tropical Botanic Garden. Munro also complains about a map, photographs, and pitch decks that he neither created nor

1

owns any intellectual property rights in.

Munro brought claims for copyright infringement per 17 U.S.C. §106 and violation of the DMCA per 17 U.S.C. §1202(a) and (b). The claims are based on two of his lights—a stick-and-bulb design ("stick-and-bulb") and a light he calls "firefly." Munro also brought a claim for contributory infringement against the individual Appellees based on the purported actions of the corporate Appellees.

The district court concluded that Munro failed to establish valid copyrights in the lights at issue because they lack the required originality. Because the direct copyright claim failed, the contributory copyright claim against individual defendants also failed. The district court concluded that the DMCA claim also failed because Munro did not create the *NightGarden* lights, map, pitch decks or other works complained of, because Appellees did not intentionally remove, alter, conceal, destroy or take any other prohibited action with CMI, and there was no evidence offered by Munro to create a factual question on that point. Well-established precedent mandates affirming the district court on the copyright and DMCA claims.

**Statement of the Facts**

Munro's Brief[1] misrepresents the record, includes irrelevant facts about Mr. Munro's accolades, and discusses irrelevant lights and exhibitions. (Brief at 11-28). Accordingly, Appellees set forth the following material facts, which are contained in the record, to correct Munro's misleading presentation.[2]

A. The Appellees

The Appellees created, produced and operated *NightGarden*, a 23-acre immersive light and sound event held at Fairchild. (Dkt. 69 ¶ 78; Dkt. 146 ¶ 86). Imaginer and its principal Max Painter assisted Kilburn in conceptualizing, brainstorming, building, and programming light installations for the event. (Dkt. 147 ¶ 5). Painter solely created the pitch decks that were used to convey ideas or concepts for *NightGarden.* (Id. ¶ 6). Kilburn Live and Night Garden produced the

---

[1] The Brief's pages are not in sequential order (*e.g.,* consecutive pages are paginated as 7, 18, 26, 27, 21). For clarity, Appellees will refer to the top page numbers auto-paginated by the CM/ECF system.

[2] Munro misrepresents his compliance with Rule 32. (Brief at 86). The Brief is 85 pages long and contains 14,609 words and 1,872 lines of text, which exceeds page, word, and line limits. *See* Fed. R. App. P. 32(a)(7). Appellees ask the Court to strike or disregard portions of the Brief over the required limits. If reviewing word count, the overage occurs at page 79. *See Marcus v. Galvez*, 522 F. App'x 878 (11th Cir. 2013) (declining to review excessive or non-compliant submissions); *Abner v. Scott Mem'l Hosp.*, 634 F.3d 962, 963–65 (7th Cir. 2011) (striking brief that was 4,000 words over what counsel certified).

event (Dkt. 146 ¶ 87; 148-15,16). Mark Manuel is the CEO of Kilburn. (Dkt. 146 ¶ 91). Nannette Zapata is the Chief Operating Officer of Fairchild. (Id. ¶ 93).

B. The *NightGarden* event

Between the two seasons, *NightGarden* featured more than two dozen installations that are not at issue here, such as talking trees, mazes, scavenger hunts, a computer interactive fairy, and growing dandelions. (Dkt. 146 ¶¶ 86–87; 172-1 at 47–57). The two lights complained of—referred to by Appellees as "mushrooms" and "fiber lights"—constituted a small fraction of *NightGarden*. For example, in season two, the mushroom lights were confined to less than 0.046 acres of the 23-acre event. (Dkt. 146 ¶¶ 98–99, 104; Dkt. 148-15). The fiber lights were not used in season one at all. (Dkt. 146 ¶¶ 97, 102).

Prior to season one, Appellees Painter and Kilburn Live purchased mushroom light components from Chinese manufacturer G-Lights. (Dkt. 146 ¶ 100). The parts consisted of acrylic, glass and aluminum, included a fiber-optic cable, sphere and tube, and came disassembled. (Dkt. 148-20 at 6). Appellees and their contractors assembled and arranged the lights. (*Id.* ¶¶ 87, 100–01). Photos of these "mushroom" lights pre- and post-assembly are below.



(Dkt. 145). Before *NightGarden's* second season, Appellee Night Garden,

LLC purchased parts from Chinese manufacturer Toprex. (Dkt. 146 ¶¶ 103, 105).

Appellees and their contractors altered, assembled, and placed them as filler near

trees. (Id.). These lights were made up of fiber-optic cable and green plastic tubes.

(*Id.* ¶ 106). The lights, which had no distinguishing name or feature, are depicted

below. (*Id.* ¶ 103) ("fiber lights").



*NightGarden* ran from November 2018 through January 2019 and November 2019 through January 2020. (*Id.* at ¶¶ 84–85). *NightGarden* installations were disassembled and shipped to Kilburn's warehouses in California as a matter of course after each season concluded. (Dkt. 139 at 244:19–25). Munro's counsel was notified in 2020 that the mushroom and fiber lights were housed securely at Kilburn's warehouse. (Dkt. 157-5 at 45 No. 7; 157-6 at 5, No. 10). They were shipped to Florida and inspected without objection by Munro's counsel in February 2021. (Dkt. 181-3).

Munro did not participate in *NightGarden*. (Dkt. 146 at ¶ 89). None of Munro's lights were used in *NightGarden*; Munro instead claims Appellees' lights are "knock offs." (*Id.* ¶ 88).

C.  Pre-*NightGarden* pitch decks, *NightGarden* webpage and map

In 2018, before *NightGarden* season one, Painter created electronic pitch decks that were used to inspire ideas. (Dkt. 146 ¶ 54; Dkt. 147 ¶ 7). The images used in the pitch decks were selected from Google image searches and inserted unaltered into the decks. (Dkt. 147 ¶¶ 9, 14). The decks were used internally by the *NightGarden* planning team. (*Id.* ¶¶ 11–12). Painter did not see any CMI marking or otherwise see Munro's name, exhibitions, literature or works referenced at any time. (Dkt. 147). Munro did not create and does not own any of the six challenged photographs contained in the pitch deck. (Dkt. 146 ¶¶ 59–75).

The *NightGarden* website had a "buy tickets" page that displayed a photo depicting the mushroom lights, landscaping and other lights at Fairchild. (Dkt. 146 ¶ 78; Dkt. 69 fig. 38). The photo was not taken by Munro and does not depict Munro's lights or name; instead, Munro claims it was a photo of a "copy" of his lights. (Dkt. 146 ¶ 79; Dkt. 149-1 at 213:3–9).

Kilburn Live hired an operations team who created an illustrated map of the *NightGarden* season one footprint. Munro did not create the map, and the map does not feature any Munro photographs or other information related to Munro. (Dkt. 146 ¶¶ 82–83; 149-1 at 214:2–8). The map is depicted below. (Dkt. 216 at 8).

7



D. <u>Munro's registration</u>

Mr. Munro has a copyright registration on a 2012 installation called Forest of Light, which covers six acres at Longwood Gardens in Pennsylvania. (Dkt. 148-2) ("Forest Registration").[3]

Munro is not claiming infringement of the Forest Registration arrangement or other light arrangement, and Munro has not proffered any evidence of how his light installations are arranged, other than to say that every installation is "unique" as determined by the venue's landscape and how Mr. Munro "feels." (Dkt. 146 ¶¶ 30–31; Dkt. 149-1 at 23:4–19; 39:8–15). Munro claims that a single light placed anywhere infringes because it captures the "spirit" or "essence" of Mr. Munro's lights. (Dkt. 146 ¶ 30; Dkt. 149-1 at 23:1–24; 38:7–10, 17–22; 79:9–10; 87:7–10;

---

[3] The Brief (at 20, 57) mentions *Field of Light at Sensario*, but this registration is not alleged to have been infringed and should be disregarded. (Dkt. 216 at 17 n.5)

163:19–164:10) ("It's nothing to do with the layout. It's the essence of sculpture we're talking about.")

To create installations, Munro purchases light components in bulk from third parties. (Dkt. 146 ¶ 38; 148-10; 149-1). Munro does not put any CMI or markings on these third-party pieces or lights. (Dkt. 146 ¶¶ 41, 50–51; Dkt. 149-1 at 58:2–22). Munro does not assemble the lights or arrange them; instead, volunteers and staff assemble, create and install lights for Munro's exhibitions. (Dkt. 146 ¶¶ 40, 48–49; Dkt. 149-1 at 122:5–126:18, 175:7–22, 302:9–303:9).

E. Copyright Office refuses registration for Munro's light

In August 2019, between *NightGarden* seasons, Mr. Munro applied to register a work "Untitled sphere, stem, spike, filament 3D sculptural design" with the United Stated Copyright Office ("USCO"). (Dkt. 146 ¶ 15; Dkt. 148-4). The application was rejected on August 27, 2019 as "a useful article that does not contain any copyrightable authorship needed to sustain a claim to copyright." (*Id.* ¶ 20; Dkt. 148-5). The USCO issued a second refusal in April 2020 because the "work does not contain sufficiently creative authorship either in the component elements or in the selection and arrangement of the component elements." (*Id.* ¶¶ 21–22; Dkt. 148-6). In May 2021, the USCO affirmed the refusal in a final action, finding that the work "does not contain the requisite authorship necessary to sustain a claim to copyright." (Dkt. 206-1 at 5). The refusal further states that

9

"Munro agrees that the individual elements of the Work are not protected by copyright because they are simple geometric shapes" and that granting protection on the idea of placing lighted string in glass would "effectively accord protection to the idea itself." (*Id*.)

Munro's firefly light is also not registered with the USCO. (Dkt. 69).

F.  Munro's pre-suit letter

In November 2019, at the beginning of *NightGarden* season two, Munro sent Kilburn and Fairchild a cease-and-desist letter regarding the mushroom lights. (Dkt. 146 ¶ 90). The letter did not reference fiber lights. (*Id*.) Kilburn did not know who Munro was until receiving the letter in November 2019. (*Id*.). Zapata corresponded with Munro's staff five years prior but did not recall the correspondence until reading about it in the Complaint. (*Id.* ¶ 94). Imaginer and Painter first became aware of Munro in 2020 after the lawsuit was filed. (*Id.* ¶ 95).

## Proceedings and Disposition Below

In January 2020, Munro filed suit in the Southern District of Florida, alleging copyright and DMCA claims related to Appellees' *NightGarden* event. Munro filed an Amended Complaint on July 22, 2020. (Dkt. 69).

Munro also sued Zhongshan G-Lights Lighting Co., Ltd., a Chinese manufacturer ("G-Lights"). (Dkt. 69). G-Lights did not participate in this lawsuit, and Munro obtained a clerk's default against G-Lights on April 8, 2020. (Dkt. 44).

Appellees moved for summary judgment on May 3, 2021, which was fully briefed on July 7, 2021. (Dkts. 145–151, 206–07).

Also on May 3, 2021, Munro moved for "summary judgment" on Appellees' affirmative defenses, although a Rule 56 statement of material facts did not accompany the motion. (Dkt. 154). Instead, the motion invoked Rule 37 and concerned discovery issues from more than a year prior. (*Id.*) Munro simultaneously filed a motion for spoliation based on Appellees' removing the pop-up light displays from Fairchild when season two concluded in January 2020. (Dkt. 153). The district court denied Munro's motion for spoliation and granted Appellees their fees for having to respond to the motion. (Dkt. 204).

The district court granted Appellees' motion for summary judgment on January 13, 2022 and mooted the remaining motions. (Dkt. 216 at 26). The court found that Appellees were entitled to summary judgment on all three counts of the

11

Amended Complaint. Specifically, the district court found Munro failed to establish copyrightable works capable of supporting the direct and contributory copyright infringement claims (Counts I and II). The court further found under the DMCA claim (Count III) that the lights, exhibits, webpage, guide map and pitch decks are not Munro's works, and undisputed evidence showed that Appellees had no knowledge of the existence of any CMI and did not remove, alter, distribute or add any false CMI—let alone possess the intent to do so. The court did not reach Appellees' additional grounds for summary judgment regarding lack of substantial similarity, copyright misuse, invalidity regarding Munro's Forest Registration, or failure to provide evidence of damages. (*Id*. at 20).

Munro thereafter filed a notice of appeal. (Dkt. 222).

## STANDARD OF REVIEW

A district court's decision to grant a Rule 56 motion is subject to *de novo* review. *Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1311 (11th Cir. 2001). A "plaintiff cannot defeat summary judgment by relying on conclusory allegations because this Court has consistently held that conclusory allegations without specific supporting facts have no probative value at summary judgment. Unsupported speculation also does not create a genuine issue of fact." *Buford v. Life Storage, LP*, 20-10505, 2021 WL 3720044, at *4 (11th Cir. Aug. 23, 2021) (citation omitted); Fed. R. Civ. P. 56(a). Moreover, a judgment can be affirmed on

any ground supported by the record, including alternate grounds for summary judgment. *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1303 (11th Cir. 2007).

Regarding Munro's complaints about the district court's discovery rulings and those that implicate the Southern District of Florida Local Rules, the appellate standard is abuse of discretion. *See Williams v. Slack*, 438 Fed. App'x 848, 849 (11th Cir. 2011) ("We review a district court's application of its local rules for an abuse of discretion, finding such abuse only when the plaintiff demonstrates that the district court made a clear error of judgment.")

## <u>SUMMARY OF THE ARGUMENT</u>

The district court properly entered summary judgment in favor of Appellees on Munro's copyright infringement claims. Munro's stick-and-bulb and firefly lights are uncopyrightable and are otherwise useful articles. (Dkt. 216).

The district court also properly entered summary judgment on Munro's DMCA claim. Munro did not create any of the *NightGarden* items he complains about, and Appellees did not take prohibited action with CMI—nor was there any knowledge or intent to do so. The district court's ruling should be affirmed on these grounds.

Further, the Clerk's default against G-Lights does not affect the propriety of the trial court's judgment, and Munro's challenges to S.D. Fla. Local Rules and

discovery procedures are both waived and meritless.

Alternatively, this Court can affirm the judgment on other grounds argued in Appellees' Joint Motion for Summary Judgment (Dkt. 145) but not reached by the district court (Dkt. 216). Specifically, Munro's lights have no protectible elements to support a copying claim. Mr. Munro is also misusing his Forest Registration—covering a multi-acre display at Longwood Gardens—to overreach and claim infringement over a stick-and-bulb light that the USCO has squarely found uncopyrightable. (Dkt. 145 at 19–20). And to the extent that Munro claims the Forest Registration covers his individual lights, it is invalid for lack of copyrightable subject matter. Finally, Munro is not eligible for statutory damages and has failed to provide any evidence of actual damages or causal connection to *NightGarden* revenue and the conduct complained of. (Dkt. 145 at 31–35). The district court's ruling should be affirmed.

## ARGUMENT AND CITATIONS OF AUTHORITY

### I.    THE DISTRICT COURT CORRECTLY HELD THAT MUNRO'S LIGHTS ARE UNCOPYRIGHTABLE AND USEFUL ARTICLES.

To state a claim for copyright infringement, Munro had the burden to prove (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Singleton v. Dean,* 611 F. App'x 671, 672 (11th Cir. 2015). Munro had a burden to prove copyright validity on all works—including Munro's

Forest Registration—because that work was not registered within five years of publication and is therefore not afforded any presumption of validity under 17 U.S.C. § 410. *See Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996) (explaining that the plaintiff must demonstrate ownership of a copyright). This Court can affirm the judgment below for three reasons: first, Munro is impermissibly trying to protect an idea; second, Munro's lights are not copyrightable—as made clear by the USCO refusals; and third, Munro's lights are otherwise useful articles.[4]

### A. Munro cannot protect the idea of placing lights outdoors.

In essence, Munro is attempting to prevent anyone from using the idea of placing fiber-optic cable lights outdoors. *See* (Dkt. 149-1 at 78–79) (featuring Mr. Munro testifying that Appellees copied the "spirit" of his lights).[5]

Copyright law does not protect any "idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b). This Court has agreed and rejected such claims. *See Utopia Provider*

---

[4] Because the direct copyright claim fails, this Court should also affirm the rejection of the contributory infringement claim. (Dkt. 216 at 21).

[5] Munro's Brief incorrectly states this case is about 17 works, but later confirms it is about six works: the stick-and-bulb, firefly and a handful of unregistered exhibitions. (Brief at 17, 29).

15

*Sys., Inc. v. Pro-Med Clinical Sys., L.L.C.,* 596 F.3d 1313, 1320 (11th Cir. 2010)

(finding forms are not copyrightable in affirming summary judgment); *Oravec v.*

*Sunny Isles Luxury Ventures, L.C.,* 527 F. 3d 1218, 1227 (11th Cir. 2008)

(declining to afford protection to architectural concepts because it would "extend

the protections of copyright law well beyond their proper scope.")

To that end, Mr. Munro admits that he creates ideas and others (staff, local

volunteers) assemble and install the lights for him; he rarely assembles the works.[6]

(Dkt. 146 at ¶¶ 48–49). The copyright protection of outdoor fiber-optic lights

generally or the "idea of arranging several useful stick-and-bulb articles together in

various landscapes" goes well beyond the permissible scope of copyrightable

material. (Dkt. 216 at 20).[7] Accordingly, the district court properly rejected

Munro's attempt to carve out a monopoly on outdoor light displays. (*Id.*)

---

[6] When questioned about the difference between River of Light and Field of Light, Munro representative Jennifer Lewis testified "It doesn't matter. . . . It could be whatever [Munro] titles it." (Dkt. 138 at 83:4–21).

[7] Munro's Brief now argues protection vis-à-vis arrangement in an attempt avoid the USCO rejection and to obfuscate the fact that he is trying to enforce an idea. (Brief at 20, 27). But Munro previously alleged and testified otherwise. *See e.g.* (Dkt. 188-1 at 26) (claiming the "stemmed sphere[s]" and fireflies individually were infringed). This Court should reject Munro's attempts to re-frame his claims here and similarly reject his sham declaration. *See Santhuff v. Seitz*, 385 Fed. App'x 939, 945 (11th Cir. 2010) (holding that a court may disregard an affidavit that is inconsistent with deposition testimony).

**B. Munro's lights are uncopyrightable.**

Munro claims error by confusing the district court's findings that (1) fiber optic lights, and the manner of placing them outdoors, is an impermissible attempt to protect an idea, with the additional finding that (2) the lights individually are uncopyrightable and useful articles. (Brief at 50-51). *See* Section I(A), *supra*, regarding ideas.[8] However, the USCO refusals and the evidence support both findings.

1. The U.S. Copyright Office refused registration on the stick-and-bulb light.

Munro's Brief does not challenge the district court's decision to defer to the USCO. This Court has found that applying "some deference to the expertise of the [Copyright] Register" in determining whether an article is ornamental or useful is appropriate. *Norris Industries, Inc. v. Int'l Tel. & Tel. Corp.*, 696 F.2d 918, 922 (11th Cir. 1983) (holding that deference should be given to the Copyright Office's decision to deny registration to a useful article because the USCO had considerable expertise). *See also Alper Auto, Inc. v. Day to Day Imports, Inc.,* 18-81753, 2020

---

[8] Munro also claims the district court erred by not engaging in a filtering analysis. (Brief at 54). However, the court did not have to conduct a filtering analysis because it never reached substantial similarity after finding that Munro could not satisfy the first element of copyright infringement—an original work. *See* (Dkt. 216 at 20).

WL 5514414 at *4 (S.D. Fla. July 13, 2020) (applying deference to USCO opinion on copyrightability).

In August 2019, Munro applied for a copyright registration on his stick-and-bulb light. (Dkt. 146 ¶ 15; Dkt. 148-4). The light was initially rejected by the USCO as uncopyrightable and a useful article (Dkt. 148-5 at 1).

In a second refusal, the USCO stated the light's elements are "basic and familiar shapes that are not subject to copyright protection." (Dkt. 148-6 at 3; Dkt. 146 ¶¶ 21–22 (citing 37 C.F.R. §201.1(a)). The USCO further found that the fiber optic cable in the bulbs "is not selected and arranged by the author, but instead is caused by the natural curvatures of the hollow tube and sphere" and unprotectible. (Dkt. 148-6 at 4; 146 ¶ 22).[9] The USCO repeatedly found that Munro's light did not contain "sufficiently creative authorship either in the component elements or in the selection and arrangement of the component elements and registration must be refused." (Dkt. 146 ¶¶ 21–22; Dkt. 148-6 at 4).

Munro exhausted his appeals, and the USCO issued a final rejection in a detailed letter on May 27, 2021. (Dkt. 206-1). The final rejection also stated that "placing a light inside of an orb" would "inappropriately allow Munro to prevent others from using this well-trod idea." (Dkt. 206-1 at 6). And, while the final rejection indicated that the bulb was not a useful article because it is intended

---

[9] When "filament" is used, it refers to a simple, fiber-optic cable.

to be integrated into larger, site-specific installations and not a lamp that assists sight, *this* case is not about the arrangement of larger, site-specific installations. (Dkt. 146 ¶ 30; Dkt. 206-1). In any event, this Court can look to the USCO's opinions and still affirm the decision that Munro's works lack any copyrightable expression without reaching the useful article issue. (*See* Dkt. 145 at 13–20, 21–27; Dkt. 148-6; 206-1).

2. Munro's lights are unoriginal and uncopyrightable.

Copyrightable originality requires "independent creation" by the author "plus a modicum of creativity." *Feist Publications, Inc.,* 499 U.S. 340, 361 (1991). Further, basic shapes, symbols or designs are not protectible. *See Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC*, 259 F.3d 25, 35 (1st Cir. 2001) (finding no protection for rectangular shapes); *see also Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1346 (Fed. Cir. 2020) (employing Eleventh Circuit law to conclude as a matter of law that the plaintiff was impermissibly seeking to assert protection over expressions of a chalk pencil holder idea).

Munro does not cite to any evidence to suggest that the lights meet the standard to prove copyrightability. Instead, Munro contends that the court erred because copyrightability determinations are inappropriate on summary judgment. In support, he cites one out-of-context sentence from this Court's *Oravec* decision and generally to *Home Legend v. Mannington Mills, Inc.* 784 F. 3d 1404 (11th Cir.

19

2015) and *Pohl v. MH Sub I LLC,* 770 F. App'x 482 (11th Cir. 2019). However, *Oravec, Home Legend, Pohl* explain that when viewing the evidence, courts can decide that because a work is not original, copying cannot be proven as a matter of law. *See Oravec,* 527 F. 3d at 1223 (affirming summary judgment where plaintiff was attempting to enforce an unprotectible idea); *see also Alper Auto, Inc.* 2020 WL 5514414 at *4 (finding that because a truck icon and arrangement are not copyrightable, copying cannot be infringement as a matter of law). And unlike Munro, the plaintiffs in *Home Legend* and *Pohl* had valid copyrights on photographs, and the question turned on a fact-intensive inquiry about the creative nature of taking the photographs. Munro's lack of copyrights, refusal from the USCO and factual record that he does not assemble or arrange the lights (or their components) renders their cited cases factually inapposite.[10]

After giving deference to the USCO's refusal opinions, the district court supplied its own analysis regarding how the stick-and-bulb and firefly lights each consist of uncopyrightable elements, both separately and as assembled. (Dkt. 216 at 18–20).[11] The lights are only made up of a few components. The stick-and-bulb

---

[10] In unsupported, conclusory fashion, Munro repeatedly claims the court ignored his evidence, should have considered his "acclaim," and that his works are "original to him and creative." (*See* Brief at 49).

[11] Because the Forest Registration is not entitled to a presumption of validity, this too supports affirming the finding of unoriginality. 17 U.S.C. § 410. *Habersham*

(*footnote continued on next page*)

20

light consists of a stick, grommet piece, sphere and fiber-optic cable. (Dkt. 146 ¶ 33). The firefly light consists of a stick, spike to place the light into the ground, "collar" piece and fiber-optic cable. (Dkt. 146 ¶¶ 44, 46). Munro has admitted the components of each light are by themselves unprotectible. (Dkt. 148-7 at 6, 206-1 at 5; 188-1 at 26).

Regarding the stick-and-bulb light, the court correctly reviewed the components and identified that the admittedly unprotectible components (stick, bulb, fiber strand) are functional. Further, when those components are assembled to create lights, each component's positioning serves a function (*e.g.,* the grommet connects the bulb to the stick). Further, the fiber cable's twisting look is simply the natural result of the interior of the bulb causing the fiber to curve as it is inserted into the sphere, rather than a result of artistic choice or skill. (Dkt. 216 at 20; Dkt. 149-1 at 128:16–129:16).

Regarding the firefly light's unprotectible components, the district court similarly identified that pushing fiber optic cable through a tube lacks originality, and Munro cannot prevent others from taking the same components—separately, assembled or repeated—and placing them into the ground. (Dkt. 216 at 20).

---

*Plantation Corp. v. Art & Frame Direct, Inc*., No. 10-61532-CIV, 2011 WL 4005454, at *3 (S.D. Fla. Sep. 8, 2011) (granting summary judgment on no entitlement to presumption of validity).

Accordingly, regardless of whether this Court gives deference to the USCO stick-and-bulb refusals, it should affirm that Munro's lights are uncopyrightable as containing admittedly unprotectible components and common shapes.

### C. Munro's lights are useful articles.

Munro has admitted that components of his lights perform functions and that the components comprising his lights are useful. (Brief at 33; Dkt. 188-1 at 24, 26; Dkt. 149-1 at 117–18, 167–68).

A "useful article" is one "having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." 17 U.S.C. § 101. Although "useful articles" themselves are not subject to copyright protection, the design of a useful article may be protected as a pictorial, graphic or sculptural work only if a feature incorporated into the design "(1) can be perceived as a two- or three-dimensional work of art separate from the useful article and (2) would qualify as a protectable pictorial, graphic, or sculptural work—either on its own or fixed in some other tangible medium of expression—if it were imagined separately from the useful article into which it is incorporated." *Star Athletica, LLC, v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1007 (2017). If there is a separable work, it must be original to be copyrightable. *See Feist,* 499 U.S. at 361.

Munro attempts to rebuff the district court's findings by arguing that his works "retain their character as sculptures" and that "the evidence in the record

was sufficient to demonstrate that his works are separable from any useful articles used to create them." (Brief at 18, 53). Notably, Munro did not point to any evidence in support of his bald conclusions, and the actual record negates them. (*Id*.) (Dkt. 146 ¶¶ 33–34, 36–39, 44–45, 47) (outlining Munro's lights and basic components used).

As argued in detail at summary judgment, the lights are common components and shapes, which means that the components cannot exist as protectible works on their own once removed from the light. (Dkt. 145 at 13–19; 146 ¶ 33; Dkt. 207 at 12–16). For example, removing the fiber-optic cable from the tube in the firefly light would leave an empty copper tube, a connecting copper piece, and a spool of unlit fiber-optic cable that can be purchased almost anywhere. (Dkt. 146 ¶¶ 44–45); *see also Baby Buddies, Inc. v. Toys R Us, Inc.*, 611 F.3d at 1308, 1317 (11th Cir. 2010) (finding a tether connecting the pieces to clothing inseparable from the article and therefore not entitled to copyright protection). And in fact, Munro purchases these separate components from third parties in bulk, and no evidence exists that Munro owns the rights to the individual components. (Dkt. 146 ¶ 38).

The USCO determination that the stick-and-bulb light is not protectible as a sculpture—both as separate components and as assembled—also cuts against protectability because it directly negates the second required element of the *Star*

*Athletica* test requiring a protectible work. *See* Section I(B)(1), *supra.* Against this evidence, Munro's lights cannot meet either element of the *Star Athletica* test. Accordingly, the district court's finding that Munro's lights are useful articles not capable of copyright protection should be affirmed.[12]

## II.     THE DISTRICT COURT CORRECTLY HELD THAT THERE WAS NO ISSUE OF FACT ON MUNRO'S DMCA CLAIM.

The DMCA statute, 17 U.S.C. § 1202(a)–(b), plays a central role in this case. Section 1202(a) requires that Munro demonstrate that Appellees knowingly provided or distributed CMI that was false with the additional intent to induce, enable, facilitate or conceal infringement. 17 U.S.C. § 1202(a). Further, a "party that puts its own CMI on work distinct from work owned by a copyright holder is not liable under [§] 1202(a), even if the party's work incorporates the copyright holder's work." *Michael Grecco Prods., Inc. v. Time USA, LLC*, No. 20-CV-4875, 2021 WL 3192543, at *5 (S.D.N.Y. July 27, 2021).

Similarly, Section 1202(b) requires a showing that a person distributed copies of works *knowing* that information has been removed or altered and *knowing* that it will induce, enable, facilitate or conceal an infringement. 17 U.S.C.

---

[12] The district court opined that the firefly light is a useful article but did not explicitly find that the stick-and-bulb light is a useful article. (Dkt. 216 at 20). The court correctly found that both lights are uncopyrightable in any event. (Id.)

§ 1202(b). In other words, a double scienter showing is required for both subsections.

Munro for the first time on appeal appears to limit his claims to subsection 1202(b)(3) by stating that Appellees distributed copies with knowledge that CMI was already removed. (Brief at 61 n.12). Munro explains that this limitation is based on Painter's purported testimony that "CMI was already removed" related to photographs. (Id.). A read of the record, however—including the portions cited by Munro—shows instead that Painter made clear that he had no knowledge of CMI, did *not* see any CMI, did *not* remove any CMI and did *not* alter any images he saw on Google. (Dkt. 147). Munro's DMCA claim remains futile.

Despite the new limitation to subsection (b) in the Brief, Munro still generally alleges that Appellees violated both sections by creating *NightGarden* lights, illustrated map, a "buy tickets" webpage, photos of *NightGarden* and pre-event pitch decks. (Dkt. 216 at 23; Dkt. 69 at 71–72). [13] Munro's claims can be

---

[13] Munro also discusses §1202 statutory construction and complains that the district court applied "too narrow" of an approach. (Brief at 49). This discussion is a red herring. The court applied the express language of § 1202(a) and (b) and rejected Appellants' position about CMI location, concluding that because none of the works were Munro's and there was undisputed evidence regarding CMI and intent, the DMCA claim failed. (Dkt. 216 at 25). In sum, an analysis of 1202(c) or whether CMI must be conveyed "in connection" with or "on" any of Munro's works is irrelevant because Munro's works *were not used* and therefore there was no CMI to remove or alter.

rejected for four reasons. First, none of the complained-of works were created or owned by Munro. Second, the district court correctly held that no evidence exists that Appellees removed or altered any Munro CMI, that Appellees added false CMI, or knew of any CMI that was removed. Third, there was no evidence that Appellees possessed the strictly required double scienter of removing, concealing, or altering CMI both "knowingly" and with "intent" to aid an infringement. Fourth, the court did not weigh evidence or make credibility determinations because Munro did not provide counterevidence to weigh. For any or all these reasons, the decision of the district court should be affirmed.

### A. Appellees' actions are outside the scope of the DMCA because Appellees did not use Munro's works.

To state a claim under the DMCA, Munro must show that Appellees engaged in prohibited acts with CMI related to *Munro's work*. Indeed, cases construing the DMCA have made clear that even where a defendant's work includes plaintiff's work, the new work is considered defendant's own and is outside the scope of the DMCA. *See Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 756 F. Supp. 2d 1352 (N.D. Fla. 2010); *Yellow Pages Photos, Inc. v. Dex Media, Inc.*, 2021 WL 799695 (M.D. Fla. Feb. 3, 2021) (finding that the defendant's directory was a different product than the plaintiff's photos inside it, such that the defendant's own CMI appearing on the cover of the directory was not "false").

1. Materials that do not use Munro's works are outside the scope of the DMCA.

Munro claims Appellees should be liable for their own works because *NightGarden* purportedly displayed "knock off" lights. [14] The law simply does not support Munro's claim, as the DMCA and cases interpreting it clearly require use of Munro's works. *See Design Basics, LLC v. WK Olson Architects, Inc.*, No. 17-C-7432, 2019 WL 527535 *5 (N.D. Ill. Feb. 11, 2019) (dismissing DMCA claim based on alleged copying of plaintiff's works in a product defendant had created itself); *see also Frost-Tsuji Architects v. Highway Inn, Inc.*, 2014 WL 5798282, at *5 (D. Haw. Nov. 7, 2014) (holding that a DMCA claim failed based on architectural plans that were virtually identical to the plaintiff's plans but may have been created by redrawing the plaintiff's plans).

Munro has amorphously complained about Appellees' lights, buy tickets webpage, photographs, and map. However, it is undisputed that Munro was not involved in *NightGarden.* (Dkt. 146 ¶ 89). It is also undisputed that Appellees did not use Munro's lights in *NightGarden*; instead, Appellees ordered light parts from China and assembled and arranged them at *NightGarden.* (Dkt. 146 ¶¶ 100, 105). It is undisputed that Munro did not create the "buy tickets" page displaying a photograph depicting *NightGarden's* mushroom lights, plants and other lights at

---

[14] Mr. Munro also contends he should be attributed to *NightGarden* despite not being involved (Dkt. 146 ¶¶ 78,80).

Fairchild.[15] (*Id.* ¶¶ 78–79). It is also undisputed that Munro did not create the map. (*Id.* ¶¶ 80, 82). Because none of the above items are Munro's works, Appellees' photographs of their own works necessarily are not Munro's photographs, either.

Because a DMCA violation cannot stand where defendants actually incorporate a plaintiff's work into a new work, a defendant's work that *never uses* any of a plaintiff's work cannot create liability. And because the use of Munro's works is not at issue, the DMCA is irrelevant, and any alleged violation of the DMCA was not supported by the undisputed facts in this case.

2.  Incorporating photos of Munro's works into works created by Appellees is outside the scope of the DMCA.

*NightGarden* pre-event pitch decks are also outside the scope of the DMCA because the pitch decks are Appellees' own work, and certain photographs—while allegedly depicting Munro installations—do not belong to Munro. *See Michael Grecco Prods., Inc. v. Time USA, LLC*, No. 20-CV-4875, 2021 WL 3192543, at *5 (S.D.N.Y. July 27, 2021); *Faulkner,* 756 F. Supp. 2d at 1359–60; *Yellow Pages Photos, Inc.,* 2021 WL 799695 at *7–*8.

In *Faulkner,* the defendant published a study aid for students called "Einstein's Notes" that incorporated material from the plaintiff's published textbooks and lecture notes authored by a professor. 756 F. Supp. 2d at 1352. The

---

[15] The Brief also complains about the word *NightGarden* on an "E-ticket," yet there is no record evidence cited nor was an E-ticket issue raised below.

plaintiff brought a DMCA claim alleging that the publisher altered or removed CMI by including plaintiff's material in its product, and that defendant published false CMI by stamping "Einstein's Notes ©" on the study aid. The court, in granting summary judgment for defendant, held that the removal argument did not apply and that "Einstein's Notes ©" was not "false" because defendant created and marked its own product. *Id.* at 1359–60.

In *Yellow Pages,* the defendant included plaintiff's photographs in its yellow-page directory. The directory included "© 201[] Dex Media. All Rights Reserved." 2021 WL 799695 at *1. Plaintiff brought a DMCA claim, asserting that the defendant's CMI was false because the directory included some of plaintiff's photographs. The court held that although the product incorporated plaintiff's photographs, the directory was a different product than plaintiff's photographs inside it. The defendant's own CMI on the product was therefore not "false" and it was not conveying any CMI regarding the images therein. *Id.* at *7.[16]

Further, Munro's out-of-circuit cases cited on this point are unavailing because they too involve DMCA claims related to a plaintiff's own work, a fact

---

[16] Much like *Faulkner Press* and *Yellow Pages,* other courts have rejected similar DMCA claims. *See, e.g., Schiffer Pub., Ltd. v. Chron. Books, LLC*, No. CIV.A. 03-4962, 2004 WL 2583817, at *14 (E.D. Pa. Nov. 12, 2004) (rejecting DMCA claim because plaintiff did not demonstrate any CMI on subject photographs); *Personal Keepsakes v. PersonalizationMall.com, Inc.,* 975 F. Supp. 2d 920, 929 (N.D. Ill. 2013) (finding no 1202(b) violation because defendant's CMI on website footer was not "false" CMI about specific images contained on website).

distinguishable from this case. *Guzman v. Hacienda Records, LP* No. 6:13-cv-41, 2015 WL 789113 (S.D. Tex. Feb 24, 2015) (featuring defendants' name placed under plaintiff's song); *Murphy v. Millenium Radio Group, LLC* 650 F. 3d 295 (3d Cir. 2011) (featuring a defendant that posted and removed gutter credit CMI from plaintiff's photo); *Energy Intel. Grp., Inc. v. Kayne Anderson Cap. Advisors, L.P.,* 948 F.3d 261, 265 (5th Cir. 2020) (featuring defendants re-naming plaintiff's newsletter and distributing it); *Friedman v. Live Nation Merchandise, Inc.,* 833 F.3d 1180 (9th Cir. 2016) (featuring the defendant using plaintiff's photographs on merchandise); *Mango v. Buzzfeed,* 970 F.3d 167 (2d Cir. 2020) (featuring a defendant that removed plaintiff's CMI from a photograph and re-published it); *GC2 Inc. v. Int'l Game Technology*, 391 F. Supp. 3d 828 (N.D. Ill. 2019) (featuring a defendant that used plaintiff's entire work in its own work without plaintiff's CMI and in violation of the parties' agreement).

What Munro's cases establish is that DMCA claims are founded on the use of a plaintiff's actual works. Therefore, Munro's claim based on Appellees' own works is baseless. Further, even if Munro owned the photographs used in the pitch deck, that still would not be a DMCA violation under *Faulkner, Yellow Pages* and others because the pitch deck is an original work created by Imaginer and Painter. The district court should be affirmed.

**B. Uncontroverted evidence shows Appellees took no action with CMI and had no knowledge or intent.**

1. <u>Appellees did not remove, conceal, or falsify CMI.</u>

There could not logically be any "removal" of Munro's CMI, addition of "false" CMI that omits Munro, or any knowledge thereon, because Munro was not involved in creating or manufacturing Appellees' works. (Dkt. 146 ¶ 89).

Munro's primary DMCA argument on CMI seems to be encapsulated in Figures 13–16 and 18–20, which depict certain pages of Appellees' season one pitch decks (Brief at 79–82; 86–88). The decks are multiple-page electronic documents and include "The NightGarden" and Appellees' company names such as "Kilburn Live" and "Imaginer" on the covers. (Dkt. 148-12). Appellees' placing their names or "*NightGarden*" on their own materials is not false. Moreover, listing Munro's name in connection with *NightGarden* would be false because it would incorrectly suggest Munro had some involvement in the event.

Munro also points to several figures purporting to be copies of a notecard, web page and physical book (Brief at 71, 73, 75, 76), baselessly declaring CMI was removed from these items and placed into the pitch deck.[17] However, uncontroverted evidence demonstrates that the pitch deck images did not come

---

[17] Munro's Brief repeatedly misrepresents the record and holdings, for example, stating "the district court determined that Munro conveyed CMI like the above," citing to Dkt. 216 at 25. The court did no such thing.

from physical materials. (Dkt. 147 ¶ 9). Nor is there evidence that any of these materials existed in 2018 when Painter conducted the Google image search. There was no evidence that CMI belonging to Munro existed on or with any of the photographs located on Google. And Painter, who created the decks, testified that he never saw Munro's name(s) in connection with *any* of the images, nor did he remove, crop, edit or alter any markings on any image used in the pitch decks. (Dkt. 146 ¶¶ 54–55; 147 ¶¶ 13–15). There is simply *no* evidence that any CMI was ever removed from those images, *no* evidence that any false CMI was added to those images, and *no* evidence that Appellees had any knowledge about CMI being removed. Accordingly, Munro's DMCA claim fails, and the judgment should be affirmed.

   2.   <u>There was no evidence of intent, and the double scienter burden cannot be met.</u>

Although this Court can affirm because Munro's DMCA claim is premised on works he does not own and because no evidence exists of any unauthorized action taken with CMI, this Court can also affirm on the additional ground that Munro failed to meet his burden of showing Appellees' intent.

 To prevail under the DMCA, there must be evidence of Appellees' "double-scienter." The statute's plain language clearly requires a double layer of knowledge—*i.e.*, knowledge/intent as to the CMI removal or falsification, *and*

32

knowledge that such removal or falsification will "induce, enable, facilitate, or conceal an infringement." (§ 1202(a)–(b)).

This Court has recently confirmed the double-scienter requirement in *Victor Elias Photography, LLC v. Ice Portal, Inc.*, 43 F. 4th 1313, 1325 (11th Cir. 2022) ("Congress enunciated the double scienter requirement for a reason, and we must interpret the statute to effectuate that intent") (citing *CBS Inc. v. Primetime 24 Joint Venture,* 245 F. 3d 1217, 1222 (11th Cir. 2001) ("we must presume that Congress said what it meant and meant what it said.")). In *Victor Elias Photography, LLC,* a photographer plaintiff complained about defendant's use of his photographs without CMI and pointed to his photographs also appearing on other third-party websites to suggest defendant knew the CMI removal resulted in other infringement. 43 F. 4th at 1323. This Court affirmed summary judgment for defendant, finding plaintiff did not demonstrate Section 1202(b)'s second scienter requirement because there was no evidence that defendant knew or had reason to know that its actions would "induce, enable, facilitate, or conceal infringement," further clarifying that the statute requires an identifiable connection "between the defendant's actions and the infringement or the likelihood of infringement." *Id.* at 1325.[18]

---

[18] Other courts similarly reject DMCA claims on these grounds. *See Yellow Pages Photos, Inc.,* 2021 WL 799695 (outlining double scienter statutory language); *Fey*

(*footnote continued on next page*)

Moreover, the double scienter requirement mandates that the defendant's knowledge relate specifically to the removal or falsification of CMI with the intent to induce, enable, facilitate or conceal infringement, not merely that the defendant knew the plaintiff's existed. *See, e.g.*, 17 U.S.C. § 1202(a), (b); *Victor Elias Photography, LLC* 43 F. 4th at 1324–25 (11th Cir. Aug. 12, 2022) (underscoring that the statute requires knowledge about CMI specifically).

This burden was Munro's to bear, and he fell woefully short. And, while Munro is correct that showing evidence of a pattern or modus operandi are some ways a plaintiff can meet its burden (Brief at 67), Munro did not establish that, either. *Id.* at 1323.[19]

As to the physical lights, "buy tickets" webpage, map or *NightGarden* photographs, there was no evidence of any intent to take action with CMI, nor could there be because Munro's CMI was not used in or with Appellees' works.

---

*v. Panacea Mgmt. Grp. LLC*, 261 F. Supp. 3d 1297, 1313 (N.D. Ga. May 18, 2017) ("[defendant] did not see Plaintiff's name" before allegedly removing it); *Oppenheimer v. Scarafile,* No. 2:19-CV-3590, 2022 WL 2704875 (D.S.C. Jul. 12, 2022) (granting summary judgment and finding no evidence of double scienter); *Krechmer v. Tantaros,* 747 Fed. App'x 6, 9 (2d Cir. 2019) (affirming dismissal for failure to meet double scienter requirement).

[19] Munro references Painter's deposition where Munro's counsel did a live Google search for "dandelions" (two years after Painter did his search) to baselessly suggest that Painter removed some unknown markings. (Brief at 68–69). None of this is related to the actual works at issue, nor does it establish knowledge or intent to remove CMI.

As to the pitch deck photographs, the uncontroverted evidence is that Painter never saw Munro's in-person installations, notecards, books or written literature (Dkt. 147 ¶¶ 16–18); did not see any Munro CMI on any of the pitch deck photographs; and never visited Munro's website until this lawsuit. (*Id.* ¶¶ 13; 15–17). In short, Painter has no knowledge regarding the who, what, or where of CMI related to the photographs—assuming CMI ever existed. Because Appellees provided uncontroverted evidence that they did not have any knowledge regarding CMI, this Court should rely on its reasoning in *Victor Elias Photography, LLC* and other cases and affirm.

**C. The district court properly considered the only evidence proffered.**

Finally, Munro complains the district court erred because it made credibility determinations related to witness' knowledge of CMI. Specifically, Munro argues "the district court should not have accepted Painter's statements because 'credibility determinations the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions.'" (Brief at 77–80) (quoting *Gowski v. Peake*, 682 F.3d 1299, 1310 (11th Cir. 2012)). On this basis, Munro argues, the court should have denied summary judgment because Painter "likely" knew about Munro because an online G-Lights advertisement mentioned Munro; Google

"warned" Painter about copyright violations; and Zapata at one time knew about Munro.[20]

Where, as here, the Appellees presented an affidavit supporting summary judgment on a matter and the plaintiff alleges—but does not produce—evidence to the contrary, then summary judgment is warranted. *Endurance Am. Specialty Ins. Co. v. L. Pellinen Constr., Inc.*, 21-10256, 2021 WL 5264673, at \*4 (11th Cir. Nov. 12, 2021). As this court explained,

> the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment…. No genuine issue for trial exists here—the [defendants] presented affidavit evidence [on a dispositive issue]. [Plaintiff] presented no evidence to the contrary. This state of the record could not lead a rational trier of fact to find for the nonmoving party, so there is no genuine issue for trial.

*Id.* (citations omitted). Thus, when the nonmoving party fails to present evidence on an issue, a genuine issue of material fact does not exist, and summary judgment is necessary. *Swint v. City of Wadley, Ala.*, 11 F.3d 1030, 1031 (11th Cir. 1994).

Munro's argument is misplaced because it mischaracterizes what the district court did. The court did not "weigh" evidence as to Painter because the record shows that Munro presented *no* evidence as to Painter's knowledge; it only hypothesized that Painter could have had knowledge. *See Josendis v. Wall to Wall*

---

[20] The district court's Order points to the statement of material facts showing that Painter did not become aware of Munro until early 2020, and Zapata forgot about Munro until the suit began. (Dkt. 216 at 10).

*Residence Repairs, Inc.*, 662 F.3d 1292, 1318 (11th Cir. 2011) (explaining that, at summary judgment, evidence consisting of "one speculative inference heaped upon another, [is] entirely insufficient.")

Instead of weighing evidence, the district court, as required by Rule 56, considered whether a genuine issue of material fact existed on the scienter issue. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986) ("there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.") So, when the nonmoving party presents no evidence on an issue, granting a motion for summary judgment is required regarding that issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) ("a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.") That's exactly what the district court did here.

The district court properly found Munro failed to present any evidence to satisfy this burden. Munro did not show that either Zapata or Painter knew or had reason to know that CMI was removed or falsified on Appellees' works or that such removal or falsification was intended to conceal, facilitate, or induce infringement. And Zapata's general knowledge of Munro's existence (that she did not recall) from 5 years prior does not meet the standard. *See Victor Elias*

37

*Photography, LLC* 43 F. 4th at 1319, 1324–25 (explaining that the statute requires

knowledge about CMI specifically).

In the face of uncontroverted evidence that Appellees did not have

knowledge regarding any CMI, the court soundly reasoned that no factual question

existed. (Dkt. 216 at 26). Munro's unsupported speculations should be disregarded,

and the judgment should be affirmed.

## III.    APPELLANTS' CLAIMS OF PROCEDURAL ROADBLOCKS ARE ERRONEOUS.

Munro also takes issue with several perceived procedural errors, apparently

attempting to distract from the substance of the copyright issues. None of the

perceived defects are germane to Appellees, and, in any event, the arguments are

waived or otherwise unfounded.

### A. The Court should affirm the judgment as to Appellees and may remand solely to permit the district court to enter final judgment regarding G-Lights.

Munro argues that the district court's entry of final judgment while G-Lights

remained in default was a reversible error requiring vacatur of the district court's

order. (Brief at 95–96). The case law is clear that the appropriate remedy in this

situation is not vacatur, but remand solely on the narrow issue of entering final

judgment regarding the defaulted party.

Munro obtained a clerk's default against G-Lights on April 8, 2020 and

never sought a default judgment against G-Lights or raised the issue of its

defaulted status until *after* entry of final judgment. (Dkts. 43, 44). *See also* Fed. R. Civ. P. 55(b).

On March 10, 2022, Munro moved this Court for dismissal of G-Lights from the appeal.[21] Munro now argues that the district court erred by entering final judgment and dismissing the action when claims against G-Lights had not yet been reduced to final judgment. (Brief at 95–96).

Appellees agree that the district court erred by not formally tying up the loose end of entering final judgment regarding G-Lights. Rule 54 permits a court to bifurcate entry of final judgment among multiple defendants if the court "expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). Here, the district court made no express determination. Until the district court entered final judgment, G-Lights simply lingered in the background, defaulted and ignored, for 21 months.[22]

In *Arango v. Guzman Travel Advisors*, 761 F.2d 1527 (11th Cir. 1985), this Court considered a factually similar matter, as the district court had improperly entered final judgment regarding one defendant while failing to enter final

---

[21] On April 12, 2022, the Court carried the motion with the case.

[22] The Order noted that G-Lights did not join in Defendants' Motion, and the Final Judgment also specified that G-Lights "defaulted and did not join in the other Defendants' Motion." (Dkt. 216 at 1 n.1.; 217 at 1 n.1). The district court did not otherwise address G-Lights in its final orders.

judgment regarding two other defendants who had been in clerk's default for several years. *Id.* at 1529–30. Citing to *Bankers Trust Co. v. Mallis,* 435 U.S. 381 (1978), this Court explained that a district court's failure to enter a final order for a defaulted defendant has no bearing on an appealed final order regarding a non-defaulted defendant. Because, as in the instant case, "[t]he only missing item is an entry of judgment against [a] part[y] who ha[s] never entered an appearance in this lawsuit," the court affirmed dismissal and final judgment as to the non-defaulted defendant yet remanded the matter to allow the district court to enter final judgment regarding the two defaulted defendants. *Id.* at 1531, 1538. *See also Coquina Investments v. TD Bank, N.A.*, 760 F.3d 1300, 1308 n.6, 1322 (11th Cir. 2014), (approving *Arango*, affirming the district court's order on appeal, and requiring the district court on remand to deal with the defaulted defendant against whom final judgment was never entered).

Appellees take no position on what the district court could have done or ultimately will do with G-Lights. But whatever that may be, it should not affect the propriety of the judgment entered in favor of Appellees. This Court should affirm entry of final judgement in favor of all other Defendants/Appellees.[23]

---

[23] Although G-Lights is defaulted, the Brief is peppered with arguments about G-Lights' alleged infringements. *See* (Brief at 13; 18–23; 26; 81). Because those are not germane to any dispositive or relevant issue on appeal, the Court should disregard these sections.

**B. Appellants' challenge to local rules is unfounded.**

The district court repeatedly warned Munro to either follow the local rules or face sanction. Having chosen the latter option, Munro now challenges the validity of the Southern District of Florida's Local Rules. (Brief at 81–84). Munro takes specific issue with docket entries 203 & 204, in which the district court denied two of Munro's discovery motions regarding requests for admissions and spoliation, respectively, because the motions violated Local Rules 26.1(g) and 7.1(a)(3). Munro's argument fails for three reasons.

First, the portion of Munro's Brief featuring this argument begins on page 81, beyond the limits established by Rule 32(a)(7). For this reason, the Court should not consider Munro's argument that the local rules are invalid.

Second, Appellants waived challenging the district court's discovery orders by not raising the issues in the notice of appeal. A "notice of appeal must . . . designate the judgment—or the appealable order—from which the appeal is taken." Fed. R. App. P. 3(c)(1)(B). Under Rule 3, an appellant's failure to cite to a particular order in its notice of appeal waives arguments regarding the omitted order unless the appellant's intent to include the order is contextually obvious. *See Pitney Bowes, Inc. v. Mestre*, 701 F.2d 1365, 1375 (11th Cir. 1983) (explaining that the court has no jurisdiction to review "judgments or issues which are not

41

expressly referred to and which are not impliedly intended for appeal") (citation omitted).

Here, Munro's Notice of Appeal cites to two specific district court orders: the Order on Defendants' Joint Motion for Summary Judgment (Dkt. 216) and Final Judgment (Dkt. 217). Although the district court entered 55 orders in the suit below, Munro's Notice of Appeal referred to only two. Accordingly, Appellees ask the Court to limit its analysis to the orders and issues properly raised and ignore Munro's argument about discovery and local rules.

Third—if the Court chooses to entertain Munro's argument—Munro's assault on Local Rules 26.1(g) and 7.1(a)(3) is substantively meritless. Local Rule 26.1(g) requires that discovery motions be filed within 30 days after either the date the discovery is due or the moving party otherwise learns of the discovery violation. S.D. Fla. Loc. R. 26.1(g). And "[f]ailure to present the dispute to the Court within that timeframe, absent a showing of good cause for the delay, may constitute a waiver of the relief sought at the Court's discretion." *Id.* Rule 7.1(a)(3) requires the movant's counsel to confer, or make reasonable effort to confer, with all persons who may be affected by the relief sought in the motion prior to filing it. S.D. Fla. Loc. R. 7.1(a)(3). "Failure to comply with the requirements of this Local Rule may be cause for the Court to grant or deny the motion and impose on counsel an appropriate sanction." *Id.*

42

Although Munro violated multiple local rules throughout this case, the most chronic deficiency was an apparent inability to file anything on time—a problem that frequently implicated Rule 26.1(g) and prompted both the district and magistrate judges to repeatedly admonish Munro. *See, e.g.,* (Dkt. 106) (denying Munro's discovery motion and warning that "Plaintiffs' dilatory tactics will not be condoned in this case"); (Dkt. 168) (warning that "[t]he Court will not condone" filing belated and violative motions, and that "[f]ailure to comply with any of these procedures may result in the imposition of appropriate sanctions"); *see also* (Dkts. 124 at 4; 160 at 3; 169; 186; 192).

Despite these warnings, Munro did not receive the message. In the first of the two discovery orders not appropriately on appeal but now challenged by Munro, (Dkt. 203), the district court denied Munro's "Motion to Confirm Matters Automatically Deemed Admitted Against NightGarden Defendants for Failing to Answer Requests for Admissions" because Munro filed the motion almost three months after the discovery was due, in violation of Rule 26.1(g), and provided no explanation for their failure to timely raise the issue.[24] The court noted its prior

---

[24] Substantively—as the court noted—Appellees responded and objected to the requests for admissions within 30 days, as required by rule. (Dkt. 203 at 2). But the court denied the motion on the narrower issue of Appellants' violation of L.R. 26.1(g).

43

warnings about Munro's chronic failure to follow the local rules, and that "a court can only assist those parties who help themselves." *Id.* at 4 (citation omitted).

Similarly, in (Dkt. 204), the court denied Munro's "Motion for Sanctions Against Defendants for Spoliation" by pointing to several facts in the record to demonstrate the substantive baselessness of Munro's motion, as well as facts showing that Munro was aware of the purported spoliation for more than a year before he filed the motion, in violation of Rule 26.1(g). The court also noted that Munro had not conferred with Appellees before filing his motion, in violation of Rule 7.1(a)(3).

Munro now argues that the district court's application of Local Rules 26.1(g) and 7.1(a)(3) was "arbitrary" and "an abuse of discretion premise[d] on not-at-all-clear deadlines erroneously viewed as triggered against Munro," and that the Rules otherwise violate federal law. (Brief at 82). This argument is facially specious. "A district court has discretion to adopt local rules. Those rules have the force of law." *Hollingsworth v. Perry*, 558 U.S. 183, 191 (2010) (citation omitted). Laws necessarily include sanctions—which, in turn, necessarily revoke or abridge rights ordinarily afforded under other laws; that's the very point of a sanction. As this Court has found, the possible range of sanctions for violating local rules is broad, including deeming facts admitted, *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008); waiver of right to challenge a matter on appeal, *Booth v. City of*

*Roswell*, 754 Fed. App'x 834, 836 (11th Cir. 2018); and, as in this case, waiver of right to relief sought in a violative motion. Indeed, this Court has heard—and rejected—the contention that Rules 26.1(g) and 7.1(a)(3) violate federal law. *See Parker v. Parker*, 829 Fed. App'x 389, 392 (11th Cir. 2020) (dismissing appellant's argument that the SDFL meet-and-confer requirement violated federal law); *Jackson v. Hill*, 489 Fed. App'x 325, 326 (11th Cir. 2012) (rejecting a challenge to the Southern District of Florida's 30-day discovery motion rule). Appellees ask the Court to reject Munro's arguments and affirm the district court's discovery orders.

### C. The district court did not err regarding Munro's errant statement of material facts.

Relatedly, Munro argues that the district court erred by applying Southern District of Florida Local Rule 56.1, which states that a non-compliant statement of material facts may be stricken (or lead to sanctions for the filing party), and that "[a]ll material facts in any party's Statement of Material Facts may be deemed admitted unless controverted by the other party's Statement of Material Facts." S.D. Fla. Loc. R. 56.1(c)(d).

Specifically, Munro questions the holding that Munro's repeated failures to comply with Local Rule 56.1 triggered the "deemed admitted" provision of the rule by accepting as uncontroverted Appellees' statement of facts in part. (Brief at 54–57) (citing D.E. 216 at n.2). Munro now argues that the district court's application

45

of this rule both (a) was too vague and (b) impermissibly subsumed other federal law. Neither argument holds water.

As to (a), the single case cited by Munro to support his vagueness argument—*Danley v. Allen*, 480 F.3d 1090, 1091 (11th Cir. 2007)—concerned a single-sentence order and no analysis. Here, by contrast, the district court explained its rationale clearly. First, the court cited to two of its previous orders and several spot examples of how Munro violated Rule 56.1—in terms of document length, timing of filing, and actual substance. Pursuant to Munro's specific, repeated violations, "the court therefore deem[ed] admitted all facts to which Plaintiffs have baselessly objected" and noted that "[t]rue disputes will be noted with the parties' respective positions." (D.E. 216 at n.2). In short, pursuant to a clear articulation of Munro's breaches of Rule 56.1, every fact in Appellees' statement of facts was deemed admitted unless expressly specified otherwise within the Order. Thus, the district court applied Rule 56.1 with precision and for its intended purpose.

As to (b), and as noted above, local rules have the force of law. *Hollingsworth*, 558 U.S. at 191. And so-called "deeming orders" such as Local Rule 56.1(c), perform a "vital function" in district court procedure. *See Reese*, 527 F.3d at 1268 (noting that deeming orders are both "a sanction for the parties and a balm for the district court. . . . Given the vital purpose that such rules serve,

litigants ignore them at their peril") (quotations and citations omitted). *See also Williams v. Slack*, 438 Fed. App'x 848, 849 (11th Cir. 2011). Thus, Munro's facial assault on Local Rule 56.1 is without merit.

### D. The Court should not disturb the district court's holding that Appellants' motion for summary judgment is moot.

Munro argues that his motion for summary judgment is not moot because it sought to exclude evidence used in Appellees' motion for summary judgment. (Brief at 81). This argument should fail for three reasons.

First, this argument also appears in Munro's Brief on page 81, beyond the bounds permitted by Rule 32.

Second, as also noted above, Munro's failure to raise the issue of his own summary judgment motion in his notice of appeal waives the issue. *See Lapaix v. U.S. Atty. Gen.*, 605 F.3d 1138, 1145 (11th Cir. 2010) (explaining that a notice of appeal must specifically identify the findings of fact, the conclusions of law, or both, that are being challenged.)

Third, Munro's argument is unfounded. When a lawsuit concludes, all otherwise-unresolved arguments and motions are necessarily mooted. *See Brunswick Cellulose, Inc. v. Rogers Cartage Co.*, CV208-87, 2009 WL 10678571, at *3 (S.D. Ga. July 1, 2009), *aff'd,* 364 Fed. App'x 592 (11th Cir. 2010) (granting defendants' summary judgment motion and ignoring plaintiffs' motion because it

47

"necessarily follows from these conclusions that the parties' remaining contentions are moot").

This Court—applying an abuse-of-discretion standard—will disturb a district court's decision to moot a pre-disposition motion only if a "reasonable likelihood" exists that, by ruling on the motion, the district court would not have disposed of the case. *Equal Employment Opportunity Comm'n v. STME, LLC*, 938 F.3d 1305, 1322 (11th Cir. 2019).

Here, Munro cannot show that his mooted motion was likely to succeed, much less that, by ruling on the motion, the district court would not have granted Appellees' motion for summary judgment. *See Anderson*, 477 U.S. at 248 ("[o]nly disputes over facts that might affect the outcome of the suit under the governing law" affect summary judgment, and "factual disputes that are irrelevant or unnecessary will not be counted.")

The district court had many reasons to ignore and moot the motion. First, Munro's ill-titled "motion for summary judgment" was not a summary judgment motion at all. It did not comport with the local rules for Rule 56 motions because Munro filed no accompanying statement of facts. *See* S.D. Fla. Loc. R. 56.1(a)(1) (requiring an accompanying statement of facts); (Dkt. 180 at 1 n.2) (noting that Appellants did not file a statement). And the document at no point mentioned, much less demonstrated, the absence of any genuine factual dispute regarding any

48

claim or defense. Instead, Munro's filing was a Rule 37 motion asking the court to strike or preclude Appellees' evidence, witnesses and defenses based on purported discovery violations.[25] (Dkt. 154 at 1–19). *See Lucas v. Florida Power & Light Co.*, 729 F.2d 1300, 1302 (11th Cir. 1984) ("Nomenclature is not controlling. The court will construe [a motion], however styled, to be the type proper for the relief requested") (citation omitted; cleaned up). Appellees ask the court to not disturb the district court's mooting of Munro's motion for summary judgment.

## IV.   OTHER GROUNDS SUPPORT A DECISION TO AFFIRM THE JUDGMENT IN FAVOR OF APPELLEES.

This Court can also affirm the judgment on the other grounds raised but not reached by the district court. *See Turner v. Wells*, 879 F.3d 1254, 1271 (11th Cir. 2018) (affirming dismissal for additional reason not reached by district court). First, there is no copying as a matter of law because there are no protectible elements in Munro's lights; second, Munro is misusing his Forest Registration; and finally, Munro has not provided any evidence of damages.

### A. Munro's works contain no protectible elements and therefore there can be no copying.

Had the district court found copyrightability, which it did not, Munro would also have to prove the second element of copyright infringement, that Appellees

---

[25] Even if charitably construed as a Rule 37 Motion, the motion was also substantively meritless, procedurally deficient, and untimely. *See* (Dkt. 180).

copied the *protectible elements* of the works. To prove copying, Munro would have had to satisfy two separate inquiries: "1) whether the defendant, as a factual matter, copied portions of the plaintiff's work, and 2) whether, as a mixed issue of fact and law, those elements of the work that have been copied are protected expression and of such importance to the copied work that the appropriation is actionable." *Cortes v. Universal Music Latino*, 477 F. Supp. 3d 1290, 1295–96 (S.D. Fla. 2020) (citing *MiTek Holdings, Inc. v. Arce Eng'g Co.*, 89 F.3d 1548 (11th Cir. 1996)).

Where, as here, no evidence of direct copying exists, a copyright plaintiff must show indirect copying by demonstrating both that the alleged infringer had access to the allegedly infringed material and that the infringer's work is substantially similar to the copyrighted expression. *See Singleton v. Dean*, 611 F. App'x 671, 672 (11th Cir. 2015); *Leigh v. Warner Bros., Inc*., 212 F.3d 1210, 1214 (11th Cir. 2000). The evidence here shows that Appellees did not know of Munro, or did not recall Munro, until the cease-and-desist letter or lawsuit was filed, and no evidence shows reasonable access to Munro's work. (Dkt. 146 ¶¶ 90–91, 94–96; Dkt. 147 ¶¶15–19).[26] Munro's reference to a recent G-Lights advertisement mentioning "Bruce Munro style" stick-and-bulb type lights also is insufficient to

---

[26] The pitch deck photos displaying some of Munro's installations do not show access either. Painter did not ever recall seeing Munro in connection with the Google images or any time prior to this lawsuit. (Dkt. 149).

establish access in this case. (Brief at 32). The unrefuted *actual* evidence of the mushroom lights order was produced. (Dkt. 148-20). And the person who chose the *NightGarden* mushroom lights testified that he did not see this listing (which also appears to have been printed years after the mushroom lights were ordered), and never saw Munro's name in connection with any lights prior to this lawsuit. (Dkt. 147 ¶ 19; Dkt. 149-3 at 34:17–25, 208:3–22). Thus, Munro failed to demonstrate any genuine issue of fact as to access.

Next, to determine if the work is substantially similar, the court must apply the extrinsic (objective) and intrinsic (subjective) tests to filter out and disregard the non-protectable elements. Under the extrinsic test, a court will inquire into whether, as an objective matter, the works are substantially similar in protected expression. *See Cortes*, 477 F. Supp. 3d at 1297 ("the court will determine whether [the plaintiff] seeks to protect only uncopyrightable elements, and if so, the works are not substantially similar as a matter of law, and summary judgment is appropriate") (citation omitted). Similarly, under the intrinsic test, the differences between the works "at the level of protectable expression" must be so significant that "no reasonable trial of fact could find the works substantially similar." *Id. See also Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1303 (11th Cir. 2020) (explaining that filtration is the process of "separating the protectable elements of

a copyrighted work from elements that, for one reason or another, aren't protected").

A review of the stick-and-bulb and firefly lights confirm that the components are simple shapes—a stick, sphere, connector piece and fiber-optic cable. (Dkt. 146 ¶¶ 33, 44; Section I(B), *supra)*. After filtering out those elements, no expression (let alone protectible expression) remains.

Once filtered, the burden shifts to Munro to prove substantial similarity between any remaining protectable material and the allegedly infringing work. *Compulife,* 959 F.3d at 1306; *Leigh*, 212 F.3d at 1214 ("[a plaintiff] must establish specifically that the allegedly infringing work is substantially similar [regarding] its protected elements.") Munro has never pointed to any remaining protectible expression; in fact, Munro has not engaged in *any* analysis about filtering. Instead, he generally declares that Appellees' lights are "knock offs" and admits that the light components are unprotectible. (Dkt. 148-7 at 6; Dkt. 206-1 at 5).

Munro's admissions, the USCO refusals and the filtering test yield the conclusion that there was no copying, and to the extent any of Appellees' lights were like Munro's, it is in the unprotectible components only. (Dkt. 188-1 at 26, 28). With no protectible expression to copy, this Court should affirm the judgment by finding Munro has not proven copying—thus, no substantial similarity exists between the works. *See Alper Auto., Inc,* 2020 WL 5514414, at *4

52

(granting summary judgment because plaintiff's "truck icon and overall arrangement are not copyrightable, [thus] copying these elements cannot be infringement as a matter of law.")

**B. Munro is committing copyright misuse with his Forest Registration.**

Appellees also moved for summary judgment on their copyright misuse and invalidity defenses related to Munro's Forest Registration. (Dkt. 145 at 19–20).

Copyright misuse prohibits a copyright holder from using a copyright "to secure an exclusive right or limited monopoly not granted by the [Copyright] Office and which it is contrary to public policy to grant." *Home Design Servs., Inc. v. Park Square Enterprises, Inc*., No. 6:02-CV-637-ORL28JGG, 2005 WL 1027370, at *11 (M.D. Fla. May 2, 2005) (citations omitted). A copyright misuse defense functions as "an absolute bar on recovery for copyright plaintiffs who have attempted to extend their limited rights to property not covered by the . . . copyright." *Id.* (citation omitted). A classic misuse is to assert rights in non-copyrightable materials to discourage others from integrating these non-protectable materials into their own creative works. *Id.* at *12.

Munro has not set forth any evidence or argument refuting Appellees' defense of copyright misuse. Munro's declaration admits that the Forest Registration covers a particular 2012 arrangement of his stick-and-bulb lights in that forest setting at Longwood Gardens. (Dkt. 182-1 ¶ 20). Munro misuses his

copyright by attempting to extend this registration from that specific 2012 light arrangement to claim infringement over a single stick-and-bulb light (which was rejected by the USCO) and Appellees' unique display of their own lights. And, to the extent Munro is trying to claim copyright over the individual stick-and-bulb light in the Forest Registration, that registration should be held invalid for lack of copyrightable subject matter. *See, e.g.*, *Bel Air Lighting, Inc. v. Progressive Lighting, Inc*., No. 1:07-CV-2199-TWT, 2010 WL 966422, at *5 (N.D. Ga. Mar. 15, 2010) (affirming summary judgment by accepting defendant's invalidity defense); *Baby Buddies Inc.* 611 F.3d at 1316 (quoting *Feist*, 499 U.S. at 348) ("[the] mere fact that a work is copyrighted does not mean that every element of the work may be protected.")

### C. Munro provided no evidence of damages.

Finally, Munro is not entitled to statutory damages, has not provided evidence of actual damage, and has not met the burden of showing a reasonable connection between alleged infringement and *NightGarden* revenues to seek Appellees' profits. (Dkt. 81, 89, 145).

Munro cannot elect statutory damages for the Forest Registration or recover their attorneys' fees because the alleged infringement occurred prior to registration. *Volk v. Zeanah*, No. 6:08-CV-94, 2010 WL 11537582, at *9 (S.D. Ga. Sept. 27, 2010) (explaining that an infringement commences under Section 412

"when the first act in a series of infringements of the same kind occurs").
*NightGarden* season one began in November 2018, and Munro's only registration
in this action is effective August 2019. (Dkt. 146 ¶¶ 8, 84).[27] The remaining
"works," — individual lights and handful of installations — are all unregistered
U.K. works. *See Kernel Recs. Oy v. Mosley*, 694 F.3d 1294, 1304 (11th Cir. 2012)
(noting that foreign works must be registered to receive statutory damages and
fees); 17 U.S.C. §§ 412, 504, 505 (explaining that statutory damages are not
available for foreign works). Without statutory damage eligibility, Munro must
show evidence of actual damages and may try to obtain infringer's profits
attributable to the infringement that are not calculated in actual damages. 17
U.S.C. § 504(a)(1), (b); 17 U.S.C. § 1203 (c)(1)–(2). Actual damages may include
"lost sales, lost opportunities to license, or diminution in the value of the
copyright," or "the fair market value of a license covering the defendant's use."
*BWP Media USA Inc. V. HipHopzilla, Inc*., No. 1:14-CV-0016-AT, 2016 WL
4059683, at *2 (N.D. Ga. May 26, 2016).

First, reputational and emotional distress are not recognized as available
remedies for copyright infringement. *See Stern v. Does*, 978 F. Supp. 2d 1031,

---

[27] Munro appears to implicitly acknowledge that his complaint related to
unregistered *Field of Light* at Longwood Gardens (a U.S. installation) is baseless
because he does not include it on his "infringement" chart. (Brief at 33) *See Fourth
Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 885 (2019)
(requiring registration prior to suit).

1050 (C.D. Cal. 2011) ("emotional distress and stress-related ailments" are not compensable under Copyright Act); *see also Kelley v. Universal Music Grp.,* No. 14 CIV. 2968 PAE, 2015 WL 6143737, at *7 (S.D.N.Y. Oct. 19, 2015) (same). Munro testified that he may have lost prospective clients and is seeking damage for emotional distress, but he provided no evidence for any measure of damages, let alone those recognized by copyright law. (Dkt. 146 ¶¶ 108–10). Second, as to lost clients, Munro did not lose any business; in fact, Munro's business *increased* during the time of the alleged infringement. (*Id*. ¶¶ 107, 113). Moreover, Munro's proffered "expert" explicitly did not perform any analysis of fair market value or any other appropriate measure of damage, leaving the factual record devoid of *any* evidence of actual damage. (Dkt. 135).

Similarly, to seek a defendant's profits, a nexus is required between gross revenue and infringement. *See Oravec*, 469 F. Supp. 2d 1148, 1175 (S.D. Fla. 2006) (explaining that a plaintiff must proffer some reasonable connection between infringement and defendant's gross revenue); *Home Design Servs., Inc.,* 2005 WL 3445522, at *14 (same).

Munro has not attempted to proffer any evidence of a causal connection between the lights—used in a small fraction of the event space—and the revenue in either *NightGarden* season. (Dkt. 146 ¶¶ 86, 99, 102–03). Seeing that Munro provided *no* evidence of lost sales, *no* evidence of lost opportunities, *no* evidence

of a retroactive licensing fee, *no* evidence of diminution in value of any copyright, and *no* evidence of any causal connection between alleged infringement and *NightGarden* revenue, this Court can affirm the district court on this ground as well. *See Carlson v. FedEx Ground Package Sys., Inc.*, No. 8:05-CV-1380-T-24, 2013 WL 3804991, at *7 (M.D. Fla. July 19, 2013), *aff'd*, 787 F.3d 1313 (11th Cir. 2015) (explaining that lack of evidence regarding damages is grounds for summary judgment).

## <u>CONCLUSION</u>

The district court did not err in granting summary judgment to Appellees both for the reasons set forth in its order and the additional grounds not reached below. This Court should affirm.

Respectfully submitted,

*/s/ Allison S. Lovelady*
Deanna K. Shullman
Florida Bar No. 514462
Allison S. Lovelady
Florida Bar No. 70662
2101 Vista Parkway, Suite 4006
West Palm Beach, Florida 33411
Telephone: (561) 429-3619
Email: dshullman@shullmanfugate.com
Email: alovelady@shullmanfugate.com

*Attorneys for Appellees*

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENT AND TYPE-STYLE REQUIREMENT</u>

The undersigned counsel hereby certifies that this brief complies with the requirements of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted Fed. R. App. P. 32(f), this brief contains 12,997 words. Further this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office in 14-point Times New Roman.

*/s/ Allison S. Lovelady*
Allison S. Lovelady

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 10th day of October 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will serve this document on all counsel of record. Further, four paper copies of this brief have been sent via Federal Express to the Clerk of Court in accordance with Rule 31-3 of the Rules of the U.S. Court of Appeals for the Eleventh Circuit.

*/s/ Allison S. Lovelady*
Allison S. Lovelady
